No. 22,806.

JOHN ELMER COOK, *Petitioner and Appellant*, v. SARAH J. MCCABE, *Respondent and Appellant*.

SYLLABUS BY THE COURT.

HABEAS CORPUS—*Custody of Minor Child—Evidence—Welfare of Child*. The evidence examined, and *held*, the conclusion of the district court that the respondent was not the most suitable person to have custody of a child unrelated to both parties to the action, that neither party was able to provide for it a normal home, and that both should be denied custody of the child, is sustained by the evidence.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed January 8, 1921. Affirmed.

*John W. Adams,* of Wichita, for the petitioner.

*James A. Conly,* and *Thomas E. Elcock,* both of Wichita, for the respondent.

The opinion of the court was delivered by

BURCH, J.: The action was one of habeas corpus, for custody of an infant. The court denied the claims of both the petitioner and the respondent, and they appeal.

The petitioner is a childless widower, who is fifty-two years old. He is engaged in the insurance business, owns valuable real estate, possesses other financial resources, and is a man of good character. The respondent was a sister of the petitioner's deceased wife. She never married, and is fifty years old. She

was employed in an abstract office for a number of years, owns valuable real estate, possesses other financial resources, and is a woman of good character. Her hearing is defective. She used an ear trumpet in court, but claims to be adept at lip reading. The petitioner married Julia McCabe in 1907. To the disappointment of both, they had no children. In June or July, 1916, Mrs. Cook went to California. On July 21, 1916, the child, a girl, was born in a hospital in the vicinity of Los Angeles. Its mother was a school teacher whose husband deserted her, and she permitted Mrs. Cook to take the child when it was about a month old. Mrs. Cook had the child examined by a physician to see if it were defective in any way, stayed at the physician's house some three or four weeks, and then returned to her home in Kansas and represented the child to be her own. Soon afterwards it became known that Mrs. Cook was afflicted with a malady, from which she died in April, 1919. She left a will expressing the wish that the respondent should have personal care of her "daughter" until "my daughter shall reach the age of fifteen years." The will gave the respondent a considerable sum of money in trust for the child. The petitioner consented in writing to his wife's will, but expressed to her, dissatisfaction with her disposal of the child. In December, 1918, the respondent came into the petitioner's home, and remained there after Mrs. Cook's death. Believing she was acting according to her sister's wishes, the respondent refused to leave the Cook home without the child, and the petitioner would not allow the child to go.

It was conceded the will failed to create a testamentary guardianship. Neither claimant had a right to custody of the child, in the proper sense of the term, and the question was, What was best for the child? The child had been well cared for, and had developed in a satisfactory manner, but the situation at the Cook home was one which could not endure. What the little girl, three years and three months old at the time of the trial, needed, was a mother. She could not be left to the care of a man, a stranger by blood, however domestic he might be, and the petitioner offered no substitute for maternal nurture except such as might be given by hired help, and such as his own mother, who is now more than eighty-seven years old, could supply. The respondent wanted to carry out the

wishes of her departed sister.  To do that she would remain, as she had been doing, at the petitioner's home, where she was no longer welcome.  Each one criticised the other's treatment of the child, and the respondent communicated with the petitioner through her lawyer.  If given sole custody of the child, she would take rooms in some private residence or in some apartment house, furnish them with her sister's personal effects and some of her own, and so provide a place in which to fulfill her mission.  After discussing with her from the bench the subject of the child's welfare, the court announced he did not consider her the best person to have the rearing of the child, and did not consider either contestant was able to furnish it with a normal home.  In the course of the trial, the court indicated it had in mind a suitable home for the child, if it were accepted there.  At the conclusion of the evidence the court took the cause under advisement, for the purpose of consulting the persons in view, and announced that if they favored the court's plan, they might be called for examination, if the attorneys for the parties so desired.  Afterwards an order was entered awarding custody of the child to Mr. and Mrs. Orin A. Sarles, of Mount Hope, Kan.

Mr. Cook feels his own life has become inseparably bound up with that of the child, whom he has put to bed at night and dressed in the morning, and who has gladdened his days for so long a time.  He is willing, however, to subordinate his intense desire to keep her, to her welfare.  Stated in legal terms, his argument in substance is that the judgment of the district court is not sustained by sufficient evidence.  Giving due consideration to the circumstances under which his attachment to the child arose, the length of time he has looked upon her as his own, the manifest fruits of his devotion to her, glowing in her good health and happiness, and his financial ability to make ample provision for her future—all excellent guaranties for the welfare of the child—this court cannot ignore the subject of sex, and is satisfied the child ought to be mothered, in a home different from that which he is able to provide.

Miss McCabe's claim is more easily disposed of.  She is dominated to an extent by notions demonstrated to be impracticable.  There is evidence indicating that her present devotion to the child was delayed in manifestation until shortly before

litigation arose. The home and upbringing which she would provide for the child would be factitious. The district court was able to judge of her personality, and in the absence of evidence showing the child's prospects have been clouded by the order of the court, the order must be sustained.

The respondent says the court did not exercise judicial discretion in determining the case. The specifications are that the end was reached before the respondent introduced her evidence, that undisputed evidence was ignored, and that standards of judicial decision in this class of cases were ignored. None of these charges is warranted by the record.

Counsel for the respective parties made full statements of their positions and evidence. At the close of the petitioner's evidence, it was perfectly clear custody of the child should be changed, and the court undertook to secure approval of a suggested change. The respondent was obdurate, and was then permitted to introduce all the evidence she had. She was likewise given opportunity to question the benefits which the child would derive from the change which was made, and she had nothing to offer.

The undisputed evidence referred to is that the respondent is a person of good character, that there was mutual affection between herself and the child, and that she was financially able to support it—facts which were equally true of the petitioner.

The chief standard which it is said the court ignored is, "Let well enough alone." It is said the proverb springs from the good sense and experience of mankind, and is a *caveat* which applies to courts as well as individuals. This is not the place to discuss at length the subject of secular proverbs—those oracular truisms which, as Edward Fitzgerald said, we have learned from the lips of grandmother and nurse, and have written in our copy books, but which we understand only as the years furnish occasion for practicing or experiencing them. Many proverbs abound in good sense, energy, and courage, compactly expressed, and help to "drive the nail home." Some are found to be nearly as impractical as the attempt to "make a silk purse out of a sow's ear." Others are ambiguous and capable of disastrous application, such as "stuff a cold and starve a fever." Others are untrue, and would smother the fire of aspiration in ashes of sordid realization. Nothing palls like

possession. Progress depends on dissatisfaction with achievement, and "a bird in the hand is" not "worth two in the bush." Very often proverbs offset each other. The one invoked is counterbalanced by "nothing venture, nothing gain," and is the specific anodyne of the sluggard, the slacker, and the conservative, agitated by the call to action, to duty, and to improvement. Granting the wisdom of the proverb when well enough is perceived to be indeed well enough, in this instance the situation in the Cook household had become insufferable, change was imperative, and in disposing of the child the court was guided by the polestar of judicial decision in such cases—welfare of the child.

The action was commenced to free the child from the restraints upon its well-being imposed by the conditions existing at the Cook home. Miss McCabe became a candidate for individual custody of the child, and was defeated. Being without legal right, she is not in a position to complain of the judgment without demonstrating that the child would be better off with her.

The judgment of the district court is affirmed.